UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In re:<br><br>Christopher W. Glenn,<br><br>Debtor. | Bankruptcy Case No.: 23-30132<br><br>Chapter 11 |
|---|---|

**OBJECTION OF ACAR LEASING LTD. d/b/a GM FINANCIAL LEASING TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION DATED JULY 24, 2023**

[¶1] ACAR Leasing Ltd. d/b/a GM Financial Leasing ("GM"), a party in interest in the above-entitled chapter 11 bankruptcy case, objects to Debtor's Plan of Reorganization ("Plan") dated July 24, 2023, and filed as document number 54, for the following reasons.

[¶2] On May 21, 2021, Christopher W. Glenn ("Debtor") entered into a Closed End Motor Vehicle Lease ("Lease") with Ryan GMC Buick Cadillac ("Dealer") for a new 2021 Cadillac Escalade ESV VIN# 1GYS4PKL8MR346984 ("Collateral"). A copy of the Lease is attached as Exhibit A. The Contract was assigned to GM. Under the terms and conditions of the Lease, Debtor promised to pay the total lease payments of $69,526.32, in thirty-six (36) monthly payments of $1,775.87 beginning May 21, 2021, and due on the 21st of each month. Debtor still owes $23,006.42 over the term of the Lease.

[¶3] The Plan places GM in Class 3 regarding an unpaid Lease payment but provides that the claim "shall be paid *pari passu* with that of Class 4." (Doc. ID# 54 at p.8). Class 4 is the class of "nonpriority, unsecured claims, excepting those expressly included in Class 3 (ACAR Leasing Ltd. d/b/a GM Financial Leasing"). Id. The creditors placed in Class 4 "will be paid, *pari passu*, after the Debtor pays the priority portion of the Class 1 claim herein." Id.

[¶4] GM objects to the Plan because it is ambiguous regarding whether the Lease is being assumed or rejected. Debtor states in Class 3 that "[t]his claim is technically unsecured but correlates to a missed payment on an automobile leased by the Debtor and, as such, a failure to pay this claim would invite concerns about the claimant's right to terminate the lease (which is <u>accepted</u> in this plan)." <u>Id.</u> (emphasis added). Section 6.01 states that Debtor assumes the unexpired leases set forth on lines 2.1 through 2.2 of Schedule G. <u>Id.</u> at p.9 However, the GM Lease is listed on line 2.3 of Schedule G. <u>Id.</u> at p.5 Accordingly, the Plan fails to adequately state the Lease's treatment under the Plan as required by 11 U.S.C. § 1125.

[¶5] The Plan also fails to comply with 11 U.S.C. § 365, which provides:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

[¶6] Assuming the Debtor intends to assume the Lease, the Debtor's Plan fails to comply with § 365(b)(1)(A). This statute requires the Debtor to cure the unpaid lease payment described in his Plan prior to or at the time of the assumption of the Lease. Rather, the Plan states that the Debtor will pay the defaulted lease payment to GM with other unsecured creditors instead of prior to or at the time of the assumption of the Lease. Further, the Plan fails to state when Debtor will cure the default payment. The Plan also fails to provide adequate assurance, as required under 11 U.S.C. § 365 (b)(1)(C), that the unpaid lease payment will be paid. Debtor must specify the amount to be paid and when it is to be paid prior to the assumption of the Lease.

[¶7] Wherefore, ACAR Leasing Ltd. d/b/a GM Financial Leasing requests that confirmation of the Plan be denied.

Dated: August 15, 2023.

/s/ *Douglas W. Murch*
Douglas W. Murch, ND ID # 05983
CONMY FESTE LTD.
P.O. Box 2686
Fargo, ND  58108-2686
(701) 293-9911
dmurch@conmylaw.com

ATTORNEYS FOR GM FINANCIAL LEASING

CONSUMER PAPER

# CLOSED END MOTOR VEHICLE LEASE (WITH ARBITRATION PROVISION)

Lease Date 05/21/21

| Lessor Name and Business Address | Lessee Name and Address | Co-Lessee Name and Address |
|---|---|---|
| RYAN GMC BUICK CADILLAC<br>1111 20th Ave Southwest<br>Minot, ND 58701 | CHRISTOPHER WAYNE GLENN<br>12540 24TH ST NW<br>WATFORD CITY, ND 58854<br>County MCKENZIE | N/A<br>N/A<br>N/A<br>County N/A |

| Lessee Billing Address (if different than above) | Vehicle Garaging Address (if different than above) |
|---|---|
| P O BOX [illegible]<br>WATFORD CITY ND 58854 | 12540 24TH ST NW<br>WATFORD CITY ND 58854<br>County MCKENZIE Principal Driver (if business use) |

In this Lease "you" and "your" mean the lessee and co-lessee. "We," "us" and "our" mean the lessor, and any assignee of this Lease. [illegible]

Monthly Payment Lease: If your payment schedule shows monthly scheduled payments in Item 3A, your lease is a monthly payment lease.
Single Payment Lease: If your payment schedule shows a single scheduled payment in Item 3B, your lease is a single payment lease.

## 1. The Vehicle

| New/Used | Year | Make | Model | Body Style | Vehicle ID # | Odometer | Primary Use |
|---|---|---|---|---|---|---|---|
| NEW | 2021 | CADILLAC | ESCALADE ESV | 4WD 4DR SPO | 1GYS4PKL8MR346984 | 9 | Personal, unless otherwise indicated below ☐ business ☐ agricultural |

## CONSUMER LEASING ACT DISCLOSURES

**2. Amount Due at Lease Signing or Delivery** (itemized in Item 6) $ 6,775.87

**3. Scheduled Payments**
A. Your first monthly payment of $ 1,775.87 is due on 05/21/21, followed by 35 payments of $ 1,775.87 due on the 21 of each month.
B. Your single payment of $ N/A is due on N/A
C. The total of your Scheduled Payments is $ 63,931.32

**4. Other Charges** (not part of your scheduled payment)
A. Disposition fee (if you do not purchase the Vehicle and we do not agree [illegible]) $ 595.00
B. N/A $ N/A
C. N/A $ N/A
D. Total $ 595.00

**5. Total of Payments** (The amount you will have paid by the end of the Lease) $ [illegible] (2 + 3C + 4D - 6A3 - 6A4 - 6A6)

## 6. Itemization of Amount Due at Lease Signing or Delivery

**A. Amount Due at Lease Signing or Delivery:**

| | |
|---|---|
| 1. Capitalized cost reduction | $ 5,000.00 |
| 2. Taxes on capitalized cost reduction | $ N/A |
| 3. First monthly payment | $ 1,775.87 |
| 4. Single scheduled payment | $ N/A |
| 5. Refundable security deposit | $ N/A |
| 6. Lease acquisition fee | $ N/A |
| 7. Title fees | $ N/A |
| 8. License and registration fees | $ N/A |
| 9. Sales/use tax | $ N/A |
| 10. N/A | $ N/A |
| 11. N/A | $ N/A |
| 12. Total | $ 6,775.87 |

**B. How the Amount Due at Lease Signing or Delivery will be paid:**

| | |
|---|---|
| 1. Net trade-in allowance | $ N/A |
| 2. Rebates and noncash credits | $ N/A |
| 3. Amount to be paid in cash | $ 6,775.87 |
| 4. Other N/A | $ N/A |
| 5. Total | $ 6,775.87 |

## 7. Your scheduled payment is determined as shown below:

| | | |
|---|---|---|
| A. Gross capitalized cost. The agreed upon value of the Vehicle ($ 111,062.00) and any items you pay over the Lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) | | $ 116,336.26 |
| B. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost | - | $ 5,000.00 |
| C. Adjusted capitalized cost. The amount used in calculating your base scheduled payment | = | $ 111,336.26 |
| D. Residual value. The value of the Vehicle at the end of the Lease used in calculating your base scheduled payment | - | $ 56,306.55 |
| E. Depreciation and any amortized amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease term | = | $ 55,029.71 |
| F. Rent charge. The amount charged in addition to the depreciation and any amortized amounts | + | $ 8,901.61 |
| G. Total of base scheduled payments. The depreciation and any amortized amounts plus the rent charge | = | $ 63,931.32 |
| H. Lease payments. The number of payments in your Lease | ÷ | 36 |
| I. Base scheduled payment | = | $ 1,775.87 |
| J. Sales/use tax (e) | + | $ N/A |
| K. N/A | + | $ N/A |
| L. N/A | + | $ N/A |
| M. Total Scheduled Payment | = | $ 1,775.87 |

**Early Termination. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 15,000 miles per year at the rate of $ 0.25 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease term for $ 56,306.55 plus a purchase option fee of $ N/A. The purchase option price does not include official fees such as those for taxes, tags, licenses and registration.

**10. Other Important Terms.** See your Lease documents for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

## 11. The Trade-In Vehicle

Year N/A
Make N/A
Model N/A

| | |
|---|---|
| A. Gross Amount of Trade-In Allowance | $ N/A |
| B. Prior Credit or Lease Balance | - $ N/A |
| C. Net Trade-In Allowance (if less than 0 then enter 0) | = $ N/A |

## 12. Itemization of Gross Capitalized Cost

| | |
|---|---|
| A. Agreed upon value of the Vehicle | $ 111,062.00 |
| Other amounts included in the gross capitalized cost | |
| B. Taxes | $ 3,265.76 |
| C. Title, license, and registration fees | $ 189.50 |
| D. Lease acquisition fee | $ 695.00 |
| E. Documentation fee | $ 229.00 |
| F. Prior credit or lease balance | $ N/A |
| G. EXCESS WEAR AND TEAR | $ 895.00 |
| H. N/A | $ N/A |

| Optional Products and Services | |
|---|---|
| I. N/A | $ N/A |
| J. N/A | $ N/A |
| K. N/A | $ N/A |
| L. N/A | $ N/A |
| M. N/A | $ N/A |
| N. N/A | $ N/A |
| O. N/A | $ N/A |
| P. Total Gross Capitalized Cost | $ 116,336.26 |

**IF YOU DO NOT MEET YOUR OBLIGATIONS UNDER THIS LEASE, WE MAY RETAKE THE VEHICLE.**

**13. Official Fees and Taxes.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in your scheduled payments or assessed otherwise: $ 3,684.26 (e). The total fees and taxes you pay may be different than this estimate based on changes in the tax or fee rates and the value of the Vehicle when the fee or tax is determined.

**14. Late Payments.** For any payment not received within 10 days of the date it is due, you will pay a late charge of THE LESSER OF $25 OR 5%. You will not have to pay a late charge if the only amount that is late is a late charge you owed for an earlier late payment.

**15. Returned Payments and Unpaid Fines and Fees.** You will also pay a returned payment charge of $ 0.00 for any check, instrument or electronic funds debit that is returned unpaid for any reason, if the law allows it. If you don't pay a fine, penalty, toll or parking ticket and we elect to pay it, you will reimburse us for the amount paid plus a $ 25.00 Administrative Fee per incident, if the law allows it.

**16. Warranties.** The Vehicle is subject to the manufacturer's standard warranty, unless this box is checked ☐
☐ If this box is checked, the Vehicle is subject to the following express warranties: N/A

Warranty papers that are separate from this Lease state any coverage limits. The law gives you a warranty that the Vehicle conforms to the description in this Lease. THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE. Except as prohibited by law, the following sentence applies. WE DISCLAIM ANY WARRANTIES IMPLIED BY LAW, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. If we make a written warranty covering the Vehicle or, within 90 days of the Lease Date we enter into a service contract covering the Vehicle, this disclaimer will not affect any implied warranties during the term of the written warranty or service contract.

## 17. OPTIONAL PRODUCTS AND SERVICES

You are not required to buy any of the following optional products and services to enter into this Lease. [illegible] **By initialing below, you indicate that you want to buy the optional products and services indicated. If the cost shown below is not shown as part of the Itemization of Amount Due at Lease Signing or Delivery (Item 6), it has been added to the Gross Capitalized Cost (Item 7A).**

| Optional Product or Service | Coverage | Price | Name of Provider | Approval |
|---|---|---|---|---|
| XS Wear & Tear | 36 Months | $895 ~~N/A~~ | Acar Leasing LTD. | Lessee Initials [initials] |
| | | N/A | | Lessee Initials |
| | | N/A | | Lessee Initials |
| | | N/A | | Lessee Initials |

## 18. TYPES AND AMOUNTS OF REQUIRED INSURANCE COVERAGE

You must maintain: Bodily Injury Coverage with $ 100,000 / $ 300,000 limits, Property Damage Coverage with $ 50,000 / $ 300,000 limits or combined single limit, Collision, Fire, Theft and Comprehensive Coverage with a maximum deductible of $ 1,000. See Item 23(a) for additional insurance provisions. You confirm that insurance policies that meet the requirements described in this Lease are in force on the date of this Lease as follows:

Insurance Company Name NATIONWIDE INSURANCE
Insurance Agency Name NATIONWIDE PROP & CAS NATIONWIDE
Agency Address PO BOX [illegible] CANTON, OH [illegible]
Agency Phone Number [illegible]
Agent's Name NATIONWIDE PROP & CAS
Policy Number [illegible]
Deductibles: Collision $ N/A Comprehensive $ N/A

## 19. SCHEDULED LEASE END AND LEASE TERM

A. This Lease is scheduled to end on a date determined as follows: [illegible] (Item 19B)

B. The scheduled lease term is 36 months

## 20. HOW THIS LEASE CAN BE CHANGED

This Lease contains the entire agreement between you and us relating to this Lease. Any change to the Lease must be in writing and both you and we must sign it. No oral changes are binding.

Lessee Signs X [signature]
Co-Lessee Signs X

**NOTICE: THE OTHER SIDE OF THIS LEASE CONTAINS IMPORTANT TERMS AND CONDITIONS, INCLUDING AN ARBITRATION PROVISION. THE TERMS AND CONDITIONS ON THE REVERSE SIDE ARE PART OF THIS LEASE.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this Lease, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Lessee Signs X Co-Lessee Signs X

Notice is hereby given that the rights, but not the obligations, of N/A to purchase and/or sell the asset described in this Lease have been assigned to N/A pursuant to an agreement between N/A and N/A

NOTICE TO THE LESSEE: DO NOT SIGN THIS LEASE BEFORE YOU READ IT OR IN BLANK. YOU ARE ENTITLED TO A COPY OF THIS LEASE WHEN YOU SIGN IT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.

YOU AGREE TO THE TERMS OF THIS LEASE. YOU ACKNOWLEDGE YOU HAVE EXAMINED THE VEHICLE, THAT THE VEHICLE IS EQUIPPED AS YOU WANT, AND THAT IT IS IN GOOD CONDITION. YOU ACCEPT THE VEHICLE FOR ALL PURPOSES OF THE LEASE. YOU UNDERSTAND THAT YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU READ BOTH SIDES OF THIS LEASE, INCLUDING THE ARBITRATION PROVISION ON THE REVERSE SIDE (ITEM 24), BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED THIS LEASE.

## LESSEE SIGNATURES

Lessee Signature [signature] Date 05/21/21
Type/Print Lessee Name CHRISTOPHER WAYNE GLENN
Co-Lessee Signature N/A Date
Type/Print Co-Lessee Name N/A

## COMMERCIAL LESSEE SIGNATURE

Commercial Lessee N/A Date N/A By
Type/Print Name N/A Type/Print Title N/A

## LESSOR'S ACCEPTANCE

The Lessor's authorized signature indicates the Lessor has accepted the terms, conditions and obligations of the Lease.

Lessor Name RYAN GMC BUICK CADILLAC
Lienholder Name WELLS FARGO BANK AS COLTL AGNT
Assignee Name ACAR LEASING LTD
By [signature]
Type/Print Name Brittany Shefsted
Type/Print Title Office Manager

LAW FORM NO. [illegible]

LESSOR COPY

**EXHIBIT A**

[illegible]

[illegible] business days of any personal property you claim was in the Vehicle when it was repossessed, we will not be responsible for that property. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the Vehicle, attorney's fees, collection costs, and court costs. [illegible] will not pay any attorney's fees.

If you reside in [illegible], to the extent allowed by law, you waive: (i) notice that we intend to end this Lease and require you to return the Vehicle, (ii) notice that we have ended this Lease and that you are required to return the Vehicle, (iii) notice that we intend to require you to pay the Early Termination Liability, (iv) notice that we are requiring you to pay the Early Termination Liability, (v) notice of our intention to take possession of the Vehicle, (vi) notice that we have taken possession of the Vehicle, and (vii) any other notices pertaining to our exercise of our rights or of our intention to exercise our rights.

22. EARLY TERMINATION LIABILITY

When the Lease Can End Early. You may terminate (end) the Lease early by returning the Vehicle to us and paying us your early termination liability (see below) when we ask for it.

We may end the Lease early if you are in default, the Vehicle is damaged or destroyed beyond repair, stolen or lost (a "Total Loss"), or you die and there is no surviving lessee. If we end the Lease, you must return the Vehicle to the place we designate and pay us the early termination liability (see below) when we ask for it.

Early Termination Liability. We will figure your early termination liability as follows:

**Monthly Payment Lease.** You will owe the amount, if any, by which the Adjusted Lease Balance (see definition below) exceeds the Vehicle's Fair Market Wholesale Value (see definition below) at termination. If this amount is more than the total of the following amounts, you will instead pay the total of the following amounts: • The total of your base scheduled payments not yet due • An excess wear charge (see Item 23(c)); and • An excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8.

**Single Payment Lease.** The Base Scheduled Payment (Item 7) paid at lease signing [illegible] the depreciation and any amortized amounts (Item 7[illegible]) and the rent charge (Item 7[illegible]). • If the Vehicle's Fair Market Wholesale Value at termination (see definition below) exceeds the Adjusted Lease Balance (see definition below), we will give you a credit for the excess up to the amount of the Unused Base Scheduled Payment (see definition below). • If the Adjusted Lease Balance exceeds the Vehicle's Fair Market Wholesale Value at termination, you will owe the excess up to the total of the following amounts: • An excess wear charge (see Item 23(c)); and • An excess mileage charge for any miles in excess of the permitted mileage during the scheduled Lease term at the rate per mile shown in Item 8.

In addition to the amounts described above, you will also owe us the Item 4A Disposition Fee (unless the fee is waived under Item 23(i)) plus the Additional Amounts Due and we will apply the Additional Credits to the amount you owe (see Item 23(x)).

Definition of Adjusted Lease Balance:

**Monthly Payment Lease.** The Adjusted Lease Balance equals the difference between: (1) The Item 7C Adjusted Capitalized Cost; and (2) all depreciation and amortized amounts in the base scheduled payments that have become due. Each Item 7I Base Scheduled Payment consists of • a rent charge portion; and • a portion allocable to depreciation and any amortized amounts. Although the amount of your Item 7I Base Scheduled Payment does not change, different portions of each Base Scheduled Payment are allocated to • rent charge, and • depreciation and any amortized amounts. The portion of a Base Scheduled Payment that is allocated to depreciation and any amortized amounts is equal to the Base Scheduled Payment minus the rent charge for [illegible]

[illegible]

**Single Payment Lease.** The Adjusted Lease Balance at the beginning of the Lease equals (i) the Item 7C Adjusted Capitalized Cost minus (ii) the Item 7I Base Scheduled Payment. At the beginning of each month, the Adjusted Lease Balance increases by the rent charge for that month. [illegible] the Balance Subject to Rent Charge in [illegible] during the Lease term. At any given time during the Lease term, the "Balance Subject to Rent Charge" equals: (i) the Item 7C Adjusted Capitalized Cost; minus (ii) the Item 7I Base Scheduled Payment, plus (iii) all rent charges accrued during previous periods. The rent charge calculations are based on the assumption that the Lease goes to its full term.

**Definition of Fair Market Wholesale Value:** Unless you exercise your independent appraisal right (see below), the Fair Market Wholesale Value of the Vehicle is • the price we receive for the Vehicle at disposition, • the highest offer we receive for disposition of the Vehicle, • the amount you and we agree in writing, • or the wholesale fair market value of the Vehicle.

**Definition of Unused Base Scheduled Payment (Single Payment Lease):** The Unused Base Scheduled Payment equals: (i) the Item 7I Base Scheduled Payment, divided by (ii) the number of months in the Lease Term (Item 10), times (iii) the number of full months remaining after the date of the early termination until the Scheduled Lease End (Item 10A).

**Your Independent Appraisal Right:** To the extent your early termination liability takes into account the value of the Vehicle at termination, you may get a professional appraisal of the Vehicle's fair market wholesale value. If you do so within a reasonable time, we will use the appraised value as the Fair Market Wholesale Value. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for any appraisal. The appraisal will be binding.

23. OTHER TERMS AND CONDITIONS

(a) **Insurance.** For the duration of the Lease term, and until you return the Vehicle, you agree to maintain the amounts and types of primary insurance as indicated in Item 18 on the front of this Lease in your name. Insurance may be obtained by you from anyone reasonably acceptable to us. You must include us or anyone we require as an additional insured and loss payee on your policy. Your policy must state that we will be given at least 10 days' notice of any material coverage change, reduction, or cancellation. If your insurer does not pay a claim for any reason, it will mean that you have not maintained the required insurance. You will pay for any loss we incur because you do not maintain required insurance or because the insurer does not pay a claim. If you fail to obtain and maintain the required insurance, we may, if we choose, buy it for you. We may add the amount we pay for this insurance to your unpaid Lease obligations and charge rent on the amount added, or at our option, ask you to pay it right away. If we decide to buy this insurance, we may either buy insurance that covers your interest and our interest, or buy insurance that covers only our interest. Unless the law requires us to buy insurance that also protects your interests. If the Vehicle is damaged, stolen, or destroyed, and money becomes available from insurance, a [illegible]

NOTICE: PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS LEASE.

(b) **Total Loss of Vehicle.** [illegible] If you and we do not agree to continue this Lease with a substitute vehicle, we will end the Lease early as described in Item 22 Early Termination Liability and you will only owe the amounts described in the following paragraphs of this Item 23(b). But if: (i) the Vehicle was forfeited or confiscated under governmental authority, or (ii) the Total Loss arose from your fraud, intentional wrongful act or omission, gross negligence, or other failure to use the Vehicle in compliance with the Lease (see Item 23(f)), then you will still owe the Item 22 Early Termination Liability.

If we receive a settlement under an insurance policy that complies with the requirements of this Lease (see Items 18 and 23(a)), then:

**Monthly Payment Lease.** We will deduct the amount of any refunds we receive from cancelling optional insurance, maintenance, service, or other contracts included in this Lease from the Adjusted Lease Balance (see Item 22) to compute a net lease balance (the "Net Lease Balance"). If the Net Lease Balance is greater than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount, if any, by which your insurance deductible exceeds $1,000 for the insurance settlement we receive, and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

If the insurance settlement we receive is more than the Net Lease Balance, you will receive a credit for any excess.

**Single Payment Lease.** You will receive a credit for the Unused Base Scheduled Payment (see Item 22). We will deduct the amount of any refunds we receive from cancelling optional insurance, maintenance, service, or other contracts included in this Lease from the sum of the Adjusted Lease Balance (see Item 22) and the Unused Base Scheduled Payment to compute a net lease balance (the "Net Lease Balance"). If the insurance settlement we receive is more than the Net Lease Balance, you will also receive a credit for the excess.

If the Net Lease Balance is more than the insurance settlement we receive, you will owe the excess up to the sum of the following: (i) the amount, if any, by which your insurance deductible exceeds $1,000 for the insurance settlement we receive, and (ii) the total amount of any deductions from the value of the Vehicle used to compute the insurance settlement we receive due to past due premiums or the condition of the Vehicle before the Total Loss occurred.

[illegible]

(x) **General.** If any part of the Lease is invalid, unenforceable or illegal in any jurisdiction, the part that is invalid, unenforceable or illegal will not be effective as to that jurisdiction. The rest of the Lease will be enforceable except as provided in the Arbitration Provision below. This Lease is our entire agreement. We have made no promises to you not contained in this Lease. If any part of this Lease is found by a court or other dispute resolution body to be void or unenforceable, this Lease is to be read as if that part were never contained in the Lease.

24. ARBITRATION PROVISION

ARBITRATION PROVISION

PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

[illegible]

25. LESSOR'S ASSIGNMENT

[illegible]

Form No. GMF-UCL U 8/11

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| In re:<br><br>Christopher W. Glenn,<br><br>Debtor. | Bankruptcy Case No.: 23-30132<br><br>Chapter 11 |
|---|---|

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee at the law firm of Conmy Feste Ltd., and is a person of such age and discretion as to be competent to serve papers.

That on August 15, 2023, she served a copy of:

**OBJECTION OF ACAR LEASING LTD. d/b/a GM FINANCIAL LEASING TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION DATED JULY 24, 2023**

electronically by Notice of Electronic Filing upon all parties who have requested service in this case by filing the same via ECF with the Bankruptcy Court in the District of North Dakota and by U.S. Mail to the following:

Christopher Wayne Glenn
12548 24th Street NW
Watford City, ND 58854

/s/ *Leslyn A. Anderson*
Leslyn A. Anderson