IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-30132 |
| | ) | (Chapter 11) |
| CHRISTOPHER WAYNE GLENN | ) | |
| | ) | |
| Debtor. | ) | |

**FINAL APPLICATION OF THE DAKOTA BANKRUPTCY FIRM FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES INCURRED IN CONNECTION WITH REPRESENTATION OF
<u>CHRISTOPHER WAYNE GLENN THROUGH PLAN CONFIRMATION</u>**

Come now Maurice B. VerStandig and The Dakota Bankruptcy Firm (collectively, "DBF"), counsel for Christopher Wayne Glenn ("Mr. Glenn" or the "Debtor"), pursuant to Sections 327 and 330 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2016, and apply to this Honorable Court for allowance of compensation of (i) $22,680.00 in attorneys' fees and (ii) reimbursement of $252.55 in expenses, for total allowed compensation of (iii) $22,932.55; of which (iv) $20,462.00 is being held in trust from the payment of a pre-petition retainer; with (v) an allowed administrative claim of $2,470.55 being requested herein; and in support thereof state as follows:

**I.     Introduction**

In just over a year, Mr. Glenn and his non-filing spouse went from selling the majority of their business (or, as it was, permitting a dilution of their interests) to seeing that business wend into state court receivership proceedings some 600 miles away from their home base of Watford City, North Dakota. The degree to which Mr. Glenn had guaranteed corporate debt was – and, to some extent, remains – unclear, with corporate books and records being in sub-optimal condition. But at least two creditors of the business secured judgments on putative guarantees, with one of those judgments becoming a lien on the Debtor's homestead. Pre-filing due diligence revealed

1

other issues to be afoot, including more than $3,000,000.00 in aged obligations to creditors in Delaware, stemming from the business operations of Mr. Glenn's family in the mid-aughts. A bankruptcy filing thusly seemed the optimal means of achieving the cliché "fresh start," and this case was accordingly commenced on April 24, 2023.

Scantly four months later, a plan of reorganization was confirmed. While not technically consensual, the Plan addressed almost every ground of objection from parties in interest, while being unhindered by so much as a single rejecting ballot. And though there is still some post-confirmation work to be done (with one claim objection still pending), this case appears to have served the intended purpose of an individual Subchapter V proceeding, highlighting the benefits of collaborative efforts while also furnishing a forum for disputes to be adjudicated in an efficient fashion.

For its work as Mr. Glenn's counsel from the date of filing through the date of confirmation, DBF now seeks compensation for the fees it reasonably charged and the out-of-pocket expenses it incurred. The total amount sought is scantly more than the retainer being held in trust, and while $22,932.55 is a significant sum of money by any estimation, it is respectfully submitted that such is a reasonable sum in the prism of this case, meriting judicial approval.

**II.     Recitations Pursuant to Applicable Law**

1.     The services for which compensation is herein sought were performed between April 24, 2023 and August 28, 2023. Maurice VerStandig performed all billable work.

2.     Complete time records for attorney work are appended hereto as Exhibit A.

3.     Records of expenses incurred are included in the time records appended hereto as Exhibit A.

4. No interim fee applications were filed in this case and, as such, no prior compensation has been taken or allowed. DBF was, however, paid $4,538.00 for pre-petition services, including (i) preparation of a petition, schedules, and accompanying statements; (ii) advising the Debtor in connection with potential avenues of relief; (iii) assembling a global strategy; and (iv) paying the Chapter 11 filing fee.

5. The retainer being held by DBF was paid by Glenn LLC, an entity wholly owned by Mr. Glenn and his non-filing spouse.

6. The compensation sought hereunder, if approved, will be paid through (i) exhaustion of the retainer; and (ii) allowance of an administrative expense claim in the amount of $2,470.55.

7. There is no agreement for DBF to share compensation with any third party, though (i) DBF is operated by the same professionals and laypersons as The VerStandig Law Firm, LLC, a law firm that is wholly owned by Maurice VerStandig; and (ii) fees earned by DBF are paid to The VerStandig Law Firm, LLC and used to cover that entity's general overhead expenses, including salaries paid to non-attorney staff persons.

### III. Categorization of Time Entries Since First Interim Application

In accord with guidelines promulgated by the United States Trustee, DBF recorded all time in this matter in project categories. The time recorded – and compensation requested – for each such project category is as follows:

     a. Case Administration – 22.6 Hours - $8,920.00

     b. Claims Administration – 21.7 Hours - $8,680.00

     c. Plan and Disclosure Statement – 12.7 Hours - $5,080.00

3

### IV. "No Charge" Time

DBF, in its professional judgment, has "no charged" .7 hours of time. This time all related to contemplation of the engagement of special counsel to represent Mr. Glenn in connection with the state court receivership proceedings in Minnesota, something that did not ultimately occur. Glenn LLC ultimately did retain counsel to represent its interests in those receivership proceedings, and counsel for Mr. Glenn did confer with Glenn LLC's counsel to assess certain issues related to Mr. Glenn's personal interests; the subject conference lasted .3 hours of time and represents a charge for which compensation is sought in the amount of $120.00.

### V. Travel Time and Expenses

DBF does not seek compensation for time spent traveling to and from North Dakota, nor reimbursement for the expenses incurred in connection with such travel. As such, while there were two in-person court appearances occasioned by this case, the time records appended hereto are notably devoid of any time entries for travel and any expense entries for airfare/lodging/rental cars.

To the extent compensable work was undertaken while traveling (i.e., preparing for a hearing while on an airplane), however, such is included in the services for which compensation is sought.

### VI. Post-Confirmation Work

As noted *supra*, there is some post-confirmation work to be done in this case. It is reasonably believed this will consist of (i) tending to an already-filed claim objection; (ii) interfacing with a disbursing agent; (iii) potentially objecting to the claim of the Internal Revenue Service, if Mr. Glenn's tax obligation is adjusted and the agency does not file an amended proof of claim; and (iv) addressing any issues related to plan implementation.

Since Mr. Glenn is bound by a now-confirmed plan of reorganization, compensation for these services will not be sought "from the estate," Fed. R. Bankr. P. 2016(a), but, rather, from Mr. Glenn personally. As such, DBF does not anticipate filing a subsequent fee application herein and will, instead, directly invoice Mr. Glenn for future services rendered. However, if this Honorable Court wishes to review future fees prior to their payment, or permit parties in interest to do so, DBF has no objection to continuing to file fee applications for post-confirmation work.

### VII.   Description of Services Rendered

The time records appended hereto as Exhibit A contain a thorough description of all services rendered for which compensation is instantly sought. And many of those services are also well reflected on the docket of this case, whether in the form of papers filed or the notation of hearings attended. By way of a generalized description, however, DBF notes that services included the following:

a.   Advising the Debtor in connection with case-opening matters;

b.   Preparing the Debtor for the initial interview with the Office of the United States Trustee as well as the meeting of creditors, while attending both of those events with the Debtor;

c.   Attending a status conference and filing a report in advance of that conference;

d.   Working with the Debtor to prepare monthly operating reports;

e.   Addressing myriad issues related to the Debtor becoming separated from his employment during the pendency of this case and accepting new employment with Glenn LLC, an entity the Debtor owns with his non-filing spouse;

f.   Negotiating a resolution of the claim of Lund Oil, Inc.;

  g. Reviewing claims filed by various creditors and, where appropriate, lodging objections thereto;

  h. Representing the Debtor at an evidentiary hearing on one contested claim objection;

  i. Preparing a plan of reorganization and an amendment thereto;

  j. Representing the Debtor at an evidentiary hearing on plan confirmation; and

  k. Interfacing with counsel for the state court receiver of the Debtor's former business, including in connection with negotiations aimed at ensuring the receiver would not assert a claim in this bankruptcy case or endeavor to challenge the Debtor's eligibility to receive a discharge.

## VIII. Conclusion

WHEREFORE, Maurice Belmont VerStandig and The Dakota Bankruptcy Firm respectfully pray this Honorable Court (i) finally approve and ratify the fees sought herein in the gross sum of $22,680.00; (ii) finally approve and ratify the expenses for which reimbursement is sought herein, in the gross amount of $252.55 (iii) permit The Dakota Bankruptcy Firm to apply the retainer of $20,462.00 it is holding against the payment of the fees sought herein; (iv) allow The Dakota Bankruptcy Firm a single administrative claim of $2,470.55, being comprised of the total allowed compensation less the foregoing retainer; (v) direct the disbursing agent appointed pursuant to the Debtors' plan of reorganization to pay such sum to The Dakota Bankruptcy Firm, as an allowed administrative expense, consistent with the provisions of the confirmed plan; and (vi) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
| Dated: September 3, 2023 | By: | /s/ Maurice B. VerStandig<br>Maurice B. VerStandig, Esq.<br>The Dakota Bankruptcy Firm<br>1630 1st Avenue N<br>Suite B PMB 24<br>Fargo, North Dakota 58102-4246<br>Phone: (701) 394-3215<br>mac@dakotabankruptcy.com<br>*Counsel for the Debtor* |

*[Certificate of Service on Following Page]*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of September, 2023, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being thereby sent to:

Sarah J. Wencil, Esq.
Office of the U.S. Trustee
Suite 1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415
sarah.j.wencil@usdoj.gov
Counsel for the US Trustee

Thomas Kapusta, Esq.
P.O. Box 90624
Sioux Falls, South Dakota 57109
tkapusta@aol.com
Subchapter V Trustee

Douglas W. Murch, Esq.
CONMY FESTE LTD.
P.O. Box 2686
Fargo, North Dakota 58108-2686
dmurch@conmylaw.com
Counsel for Ford Motor Credit Company LLC

Katelyn Krabbenhoft, Esq.
HALLIDAY, WATKINS & MANN, P.C.
376 East 400 South, Suite 300
Salt Lake City, Utah 84111
Counsel for Wells Fargo Bank, N.A.

John M. Krings, Jr., Esq.
Kaler Doeling, PLLP
3429 Interstate Boulevard South
PO Box 9231
Fargo, North Dakota 58106-9231
Counsel for Lighthouse Management Group Inc.

Kathryn A. Klein, Esq.
Riezman Berger, P.C.
7700 Bonhomme Avenue, 7th Floor
St. Louis, Missouri 63105
Counsel for JPMorgan Chase Bank, N.A.

I FURTHER CERTIFY that once notice of this application and any hearing thereupon is issued by this Honorable Court, a copy of the same will be served on all parties on the mailing matrix for this case, pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6), with a certificate of service filed thereafter.

/s/ Maurice B. VerStandig
Maurice B. VerStandig